IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-477-GMS |
| | ) |
| REGIONAL MEDICAL FIRST | ) |
| CORRECTIONAL Doctors and Nurses | ) |
| and THOMAS CARROLL, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

## I. INTRODUCTION

The plaintiff Paul J. Smith ("Smith"), a former inmate within the Delaware Department

of Correction ("DOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging he was denied

medical care in violation of the Eighth Amendment. He appears *pro se* and was granted

permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4, 25.) Now before

the court is the motion to dismiss and/or for summary judgment of the defendant Thomas Carroll

("Carroll") and Smith's cross motion for summary judgment. (D.I. 30, 33.) Also pending is

Smith's motion to amend the complaint. (D.I. 28.) For the reasons that follow, the court will

grant Carroll's motion for summary judgment, will deny Smith's motion for summary judgment,

and will deny Smith's motion to amend.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Smith filed his complaint when he was housed at the Delaware Correctional Center

("DCC"), now known as the James T. Vaughn Correctional Center. The complaint was signed

by Smith on July 20, 2007, and the court considers it filed as of that date.[1]  (D.I. 2.)  The parties

agree that Smith was released from incarceration on November 10, 2007.  (D.I. 12, 31.)

Smith alleges that while housed at the DCC he was refused medical care for asthma, high

blood pressure, hip pain, lower lumbar support, spider bite, injuries sustained after he fell from

his top bunk, and chest pain, even though he repeatedly sought medical attention.  (D.I. 2.)

Smith alleges he contacted Carroll, to no avail.[2]  He specifically alleges that he was refused

medical care on May 23, 2007; he received a spider bite on May 29, 2007, and injured himself on

June 17, 2007, but as of July 6, 2007, had not been treated for either problem; and, on June 23,

2007 he had chest pains and high blood pressure but the medical staff did nothing.

*May 23, 2007 high blood pressure, hip and back pain medical complaints.*  Smith

submitted a medical grievance on May 28, 2007, stating that he needed medical attention as soon

as possible and complaining that the DCC medical staff refused to provide him with medical

supplies, and that he had not take medication required for his conditions of asthma, high blood

pressure and hip and spine pain.  (D.I. 6.)  The grievance was returned to Smith on June 12,

---

[1]The computation of time for complaints filed by *pro se* inmates is determined according
to the "mailbox rule." In *Houston v. Lack*, 487 U.S. 266 (1988), the United States Supreme
Court held that a prisoner's notice of appeal of a habeas corpus petition was deemed filed as of
the date it was delivered to prison officials for mailing to the court. While *Houston* dealt
specifically with the filing of a habeas appeal, the decision has been extended by the Court of
Appeals for the Third Circuit to other prisoner filings. *See Burns v. Morton*, 134 F.3d 109, 112
(3d Cir. 1998). Additionally, this district has extended the *Houston* mailbox rule to pro se §
1983 complaints. *Gibbs v. Decker*, 234 F. Supp. 2d 458, 463 (D. Del. 2002). After filing his
complaint Smith submitted numerous affidavits to support his claims. Some of the affidavits
refer to acts occurring after the July 20, 2007 filing date and, therefore, will not be considered by
the court.

[2]The complaint named two other defendants. Carl C. Danberg was dismissed as a
defendant on October 11, 2007. (D.I. 9.) Regional Medical First Correctional has never been
served. The USM 285 form for it was returned unexecuted on January 17, 2008. (D.I. 23.)

2007, with the notation "you need to follow procedure and submit a sick call slip." (*Id.*) Smith submitted a medical grievance on May 29, 2007 complaining that he had pain and suffering since May 23, 2007, and to date was being refused medical care. (*Id.*) Medical records indicate that on May 23, 2007, Smith was treated for chest pains at the Bayhealth Medical Center. (D.I. 32, ex. A.) He was discharged the same day and then seen by DCC medical personnel upon his return to DCC on the same date. (D.I. 32, ex. B.)

Smith submitted a medical grievance on May 27, 2007, complaining that after his hip "gave out" he was taken to medical and treated by a physician. (D.I. 6.) He continued to have pain and asked to see a physician (apparently an outside doctor) as soon as possible. (*Id.*) The grievance response, dated June 12, 2007, states, "medical determines if and when an inmate needs to be seen by an outside doctor. CMS will then determine which Dr. the I/M will be sent to." (*Id.*) Smith was examined by medical personnel on June 1, 2007. (D.I. 32, ex. B.) He was also examined on June 3, 2007 and June 11, 2007, after apparent assaults by his cell-mate. (*Id.*)

Smith submitted a medical request on June 15, 2007, complaining that the medication prescribed for hip, back, neck, shoulder, arm, and chest pain was not working and asking to see a physician as soon as possible. (D.I. 6.) He was seen by a physician the same date and scheduled for another appointment. (D.I. 6, D.I. 32, ex. B.) Smith was assigned to a top bunk and the same medical request asks for a memo assigning Smith to the bottom bunk as it "hurts getting up and down." (*Id.*) The next month, on July 19, 2007, Smith filed a request for medical care complaining that he had not received his medications, "all week." (D.I. 6.)

*May 29, 2007, spider bite.* Smith submitted a grievance, dated May 29, 2007, complaining that he had been bitten by a spider and a month had passed with no treatment. (D.I.

-3-

6.) The grievance was received by the medical unit on July 6, 2007. (*Id.*) He submitted a request for medical care on June 27, 2007, complaining that he had yet to be treated for the spider bite. (*Id.*) Smith submitted a medical request on July 10, 2007, asking for treatment of his spider bite. (*Id.*) The request states that the swelling was reduced, but he wanted a physician to examine the bite. (*Id.*) He was scheduled for an appointment. (*Id.*)

*June 17, 2007, fall from top bunk.* Smith submitted a medical sick call slip on June 17, 2007, asked to be seen as soon as possible as he fell off the top bunk in the early morning and was in pain due to injuries to his back, arm, and leg. (D.I. 6.) He submitted a second medical request the next day, June 18, 2007, complaining of numbness and asking for x-rays. (*Id.*) The response from medical, dated June 20, 2007, was that he was seen on June 15, 2007 and scheduled to see a physician. (*Id.*) Smith submitted a grievance on June 18, 2007, asking to see a physician to get a memo for a bottom bunk due to his injuries and complaining that he needed treatment as soon as possible. (*Id.*) The grievance was received by the medical unit on July 3, 2007. (*Id.*) Smith submitted another sick call request on June 20, 2007, complaining of problems with his right knee as a result of his fall from the top bunk. (*Id.*) He complained of unbearable back pain, numbness in his legs and tingling on the bottom of his feet. (*Id.*)

Smith submitted a medical grievance on June 22, 2007, requesting x-rays of his right knee and complaining of back pain. (*Id.*) The grievance states that Smith's request for x-rays was refused and he was refused treatment and pain medication for the injuries.[3] (*Id.*) Smith submitted a request for medical treatment on June 26, 2007, complaining of right knee swelling,

---

[3]Medical records confirm, however, that Smith was seen in the chronic care clinic on June 22, 2007, and that he later admitted he received pain medication that day. (D.I. 32, ex. B.)

-4-

pain, and difficulty in walking. (*Id.*) Smith submitted a request for medical treatment on July 2, 2007, complaining of back pain, right leg and knee pain. (*Id.*) He was scheduled for an appointment. (*Id.*) Smith was seen by medical on July 9, 2009. (D.I. 32, ex. B.) Medical notes from that date indicate that on June 22, 2007, a physician wrote a memo for Smith's transfer to a bottom bunk. (*Id.*) Also, Smith admitted he received the medications as ordered on June 22, 2007. (*Id.*)

On July 10, 2007, Smith submitted a medical request complaining of back pain, right knee pain, and left arm pain as a result of his fall. (D.I. 6.) He was scheduled for an appointment. (*Id.*) Smith submitted a medical grievance on July 17, 2007, asking for x-rays or an MRI of his back, leg, and arm due to worsening pain and numbness following his fall from the top bunk. (*Id.*) The grievance was returned on July 25, 2007, as a duplicate, noting the issues were previously addressed. (*Id.*) Smith was seen by medical on July 23, 2007. (D.I. 32, ex. B.)

*June 23, 2007, complaints of chest pains and high blood pressure.* Smith submitted a grievance on May 24, 2007, complaining of high blood pressure, heart issues, lower lumbar pain, asthma and other ailments, and requesting he see a physician as soon as possible. (D.I. 31, ex. D.) The grievance was received by medical on June 18, 2007. (*Id.*) Investigation indicated Smith had seen a physician on June 22, 2007, medications were ordered and he was scheduled for a follow-up appointment. (*Id.*) The matter was set for a hearing on September 26, 2007, but Smith did not appear, and the grievance was considered withdrawn. (*Id.*)

Smith submitted a medical grievance on July 6, 2007, complaining that he was unable to get the appropriate health care. (D.I. 6.) He asked to be hospitalized for his asthma, chest pain, high blood pressure, and bodily injures. (*Id.*) The date of the incident is May 23, 2007. (*Id.*)

Smith asked to be discharged to an outside medical facility. (*Id.*) The grievance was returned on July 17, 2007, unprocessed as the filing period had expired. (*Id.*)

## III. STANDARD OF REVIEW

Carroll moves to dismiss and/or for summary judgment. (D.I. 31.) Because Carroll submits documents outside the pleadings, the matter will treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005). Thus, summary judgment is appropriate only if the party shows there are no genuine issues of material fact that would permit a reasonable jury to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit. *Id.* at 247-48. An issue is genuine if a reasonable jury could possibly find in favor of the non-moving party with regard to that issue. *Id.* at 249. The moving party bears the initial burden of demonstrating that there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Additionally, the evidence is to be viewed in the light most favorable to the nonmoving party, with all doubts resolved against entry of summary judgment. *Blackburn v. United Parcel Serv.*, 179 F.3d 81, 91 (3d Cir. 1999).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Carroll moves for summary judgment on the grounds that Smith cannot establish an Eighth Amendment claim against him as he had no personal involvement and was not deliberately indifferent to Smith's medical needs; Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); Carroll is entitled to qualified immunity; the claim against Carroll in his official capacity is barred by the Eleventh Amendment; and any claim for injunctive relief is moot by reason of Smith's release from prison. Smith's cross motion for summary judgment states that he contacted Carroll, but he did nothing to support him, and he exhausted his administrative remedies. Smith also makes references to his claims against the Regional Medical First Correctional ("RMFC"). However, as will be discussed, it has never been served.

## IV. DISCUSSION

### A. Medical Needs

Carroll argues that he was not personally involved in Smith's alleged wrongs and, therefore, Smith's claims fail. He also argues that the record reflects that Smith was not denied medical care. Smith argues that he contacted Carroll, but he did nothing to support him. (D.I. 33.) While Smith makes this argument, there is nothing in the record to support this contention. The court has read the exhibits submitted by the parties, but Carroll is not mentioned in them. Smith further argues that federal and state law provide that while was in the care of the State of Delaware, the DCC was required to provide him medical care.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To prevail in a medical case, the inmate must have a serious medical need and prison officials' acts or omissions must indicate deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. at 104. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

Additionally, "[a][n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiffs' constitutional rights. *Id.; see Monell v. Department of Social Services* 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. *Sample v. Diecks,* 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d. Cir. 2005) (not reported).

The record belies Smith's position that he contacted Carroll about his medical issues.

-8-

There is no evidence of such contact. Even if Carroll had been contacted, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer,* 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

While the record reflects that Smith filed numerous grievances and slips requesting medical care, as earlier discussed in detail, it also indicates that Smith received medical treatment on numerous occasions. Indeed, he received medical treatment on many of the days he has alleged he did not. There in nothing in the record to indicate that Carroll had any reason to believe, or actual knowledge, that Smith was not receiving medical treatment.

The record does not support a finding that Carroll was aware of Smith's complaints and remained "deliberately indifferent" to his plight. *Sample v. Diecks*, 885 F.2d at 1118. After reviewing the record, the court finds and there is insufficient evidence to enable a jury to reasonably find for Smith on his claims against Carroll.[4] Therefore, the court will grant Carroll's motion for summary judgment and will deny Smith's motion for summary judgment.

---

[4]The court will not address the issues of exhaustion and qualified immunity as it will grant Carroll summary judgment on other grounds.

-9-

### B. Eleventh Amendment Immunity

Carroll seeks summary judgment on the claims raised against him in his official capacity. The Eleventh Amendment bars suits against states. *See Bolden v. SEPTA*, 953 F.2d 807, 813 (3d Cir. 1991). The State has not waived its immunity from suit in federal court, and although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (not reported) (citations omitted). Additionally, claims made against state officials in their official capacities are treated as claims made against the state itself. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71(1989). For the above reasons, the court will grant Carroll's motion for summary judgment on this issue.

### C. Injunctive Relief

To the extent Smith seeks injunctive or declaratory relief, said claims are moot as a result of Smith's release from prison and because the facts do not support his Eighth Amendment claim against Carroll. The availability of injunctive relief depends on whether there is a live dispute between the parties. *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003). Absent a showing of continuing adverse effects, an inmate's request for injunctive relief no longer presents an actual controversy after the inmate is transferred to another institution. *Winsett v. McGinnes*, 617 F.2d 996, 1004 (3d Cir. 1980). Similarly, there is no longer an actual controversy once the inmate is release from prison. Therefore, the court will grant the defendants' motion for summary judgment on this issue.

## V. MOTION TO AMEND

Smith filed a motion to amend the complaint after Carroll filed his answer. (D.I. 28.)

While not clear, it appears the motion to amend was filed in response to the answer. The motion repeats Smith's request for monetary damages, reiterate his claims, discusses Carroll's affirmative defenses, and espouses legal theories.

The proposed amendment is frivolous and fails to state a claim upon which relief may be granted and, therefore, the motion will be denied. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

## VI. SERVICE

In compliance with the court's order, Smith submitted a USM-285 form to effect service upon RMFC. (D.I. 9, 10.) The address Smith provided to serve RMFC was that of attorney Daniel McKenty. (D.I. 23.) The USM-285 was returned unexecuted, dated January 17, 2008, with the notation, "per Daniel McKenty, has never represented CMS, refused service, return unexecuted." (*Id.*) The service order was entered on October 11, 2007, and RMFC has yet to be served. Therefore, the court will order Smith to show cause why RMFC should not be dismissed for Smith's failure to serve process as required by Fed. R. Civ. P. 4.

## VII. CONCLUSION

For the above stated reasons the court will grant Carroll's motion for summary judgment, will deny Smith's motion for summary judgment, and will deny Smith's motion to amend. Smith will be ordered to show cause why RMFC should not be dismissed as not timely served pursuant

-11-

to Fed. R. Civ. P. 4(m).  An appropriate order will be entered.

CHIEF UNITED STATES DISTRICT JUDGE

_____ March 16, 2009
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAUL J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 07-477-GMS |
| | ) |
| REGIONAL MEDICAL FIRST | ) |
| CORRECTIONAL Doctors and Nurses | ) |
| and THOMAS CARROLL, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this _16th_ day of _____March_____, 2009, for the reasons set forth in the Memorandum issued this date;

    1. The plaintiff's motion to amend is **denied**. (D.I. 28.)

    2. The defendant Thomas Carroll's motion for summary judgment is **granted**. (D. I. 30.)

    3. The Clerk of the Court is directed to enter judgment in favor of Thomas Carroll and against the plaintiff at the close of this case.

    4. The plaintiff's motion for summary judgment is **denied**. (D.I. 33.)

    5. The plaintiff **shall show cause** on or before _March 31, 2009_ why the defendant Regional Medical First Correctional should not be dismissed pursuant to Fed. R. Civ. P. 4 (m).


_____
CHIEF, UNITED STATES DISTRICT JUDGE